UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | CAUSE NO: |
| v. | ) | |
| | ) | 18 U.S.C. § 2 |
| VAHAN KELERCHIAN | ) | 18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 666(a)(2) |
| | ) | 18 U.S.C. § 924(a)(1)(A) |
| | ) | 18 U.S.C. § 924(d) |
| | ) | 18 U.S.C. § 1001 |
| | ) | 18 U.S.C. § 1956(h) |

## INDICTMENT

### THE GRAND JURY CHARGES:

### COUNT 1
### (Conspiring to Provide False Information to a Federal Firearms Licensee)

At all times material to this indictment:

#### BACKGROUND

1. VAHAN KELERCHAIN (KELERCHIAN) was the principal owner and operator

    Armament Services International Inc., (ASI). ASI is engaged in the sale of firearms and

    related items primarily through internet sales.

2. ASI principal place of business is located in Warminster, Pennsylvania.

3. KELERCHIAN holds a Class 3 Federal Firearms License (FFL) allowing him to deal in

    fully automatic weapons. KELERCHIAN also holds licenses to manufacture firearms and

    sell destructive devices, (i.e. grenade launchers)

4. The Lake County Sheriff's Department was a law enforcement agency operating in Lake

    County, Indiana.

1

5. JOSEPH R. KUMSTAR was employed for approximately 17 years as a sworn law enforcement officer with the Lake County Sheriff's Department, and served as the Deputy Chief for the Lake County Sheriff's Department.

6. RONALD D. SLUSSER was employed for approximately ten (10) years as a sworn law enforcement officer with the Lake County Sheriff's Department, was a member of the Lake County Sheriff's Department Special Weapons and Tactics (SWAT) unit and a firearms instructor.

7. E & R Law Enforcement Sales was a Federal Firearms Licensee (FFL) based in Crown Point, Indiana, owned and operated in part by RONALD D. SLUSSER. RONALD D. SLUSSER previously held a Federal Firearms License while operating individually as "Ron's Gun Sales."

8. R & D Law Enforcement Sales was another Federal Firearms Licensee (FFL), based in Merrillville, Indiana, and owned and operated in part by RONALD D. SLUSSER.

9. PF Custom Guns was a Federal Firearms Licensee (FFL).

10. Heckler and Koch (hereinafter H&K) was a well know German based firearms manufacturer producing a wide assortment of handguns, rifles, machineguns, and submachineguns for both military and civilian use. H&K had numerous subsidiaries operating within the United States in Virginia, New Hampshire, and Georgia. H&K had served as a United States government contractor for the both the United States Military and United States civilian law enforcement agencies. H&K was a Federal Firearms Licensee (FFL).

2

10. Insight Technology Inc., (hereinafter Insight) located in Londonderry, New Hampshire, was a manufacturer of highly sophisticated laser aiming and illumination devices, night vision devices, laser range finding systems, computerized fire control systems, thermal imaging systems, and sensor fusion systems. Insight's products were, and are still are, used by the United States military, Federal law enforcement agencies, and allied nations. In addition, Insight Technology Inc. developed and maintained a line of tactical illuminators (laser aiming devices) restricted for use only by the military and Law Enforcement agencies, as well as products for sale to the general public.

11. Federal law restricted to law enforcement agencies or the military the sale and ownership of fully automatic machineguns manufactured after 1986. No individual law enforcement officer could purchase a post-1986 fully automatic machinegun. Possession of post-1986 fully automatic machineguns by a law enforcement officer could only be authorized by the officer's law enforcement agency and only for the law enforcement duties of that officer.

OBJECT OF THE CONSPIRACY

12. Between on or about November 2008, and continuing through on or about January of 2010, in the Northern District of Indiana and elsewhere:

**VAHAN KELERCHIAN**

defendant herein, together with Joseph Kumstar, and Ronald Slusser, did knowingly combine, conspire, confederate, and agree with each other, and with others known and unknown to the grand jury, to commit an offense against the United States, that is, to knowingly make false statements and representations with respect to information under Chapter 44, of Title 18 of the United States Code, required to be kept in the records of

3

individuals licensed under Chapter 44, relating to the acquisition of firearms, in violation of Title 18 United States Code, Section 924(a)(1)(A).

## HOW THE CONSPIRACY OPERATED

13. It was part of the conspiracy that JOSEPH R. KUMSTAR, and RONALD D. SLUSSER used their position as sworn law enforcement officers, and VAHAN KELERCHAIN used his position as a Class 3 firearms dealer to acquire approximately 71 (Seventy-One) fully automatic H&K machineguns in the name of the Lake County Sheriff's Department knowing that the Lake County Sheriff's Department was not the true owner of these machineguns.

14. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHAIN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knew these H&K machineguns were manufactured after 1986, and therefore could only be acquired by law enforcement agencies and not individual law enforcement officers.

15. It was further part of the conspiracy that when acquiring the H&K machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused false entries listing the Lake County Sheriff's Department as the owner of these machineguns, to be made by individuals and companies required to keep such records under Chapter 44, of Title 18 of the United States Code.

16. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, used Lake County Sheriff's Department letterhead to create letters which falsely represented that the

4

H&K machineguns were being purchased by and were going to be used by, the Lake County Sheriff's Department in carrying out its law enforcement responsibilities.

17. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER used the Lake County Sheriff's Department letterhead to create documents which falsely represented the H&K machineguns were to be used by the Lake County Sheriff's Department.

18. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER created false and fictitious Lake County Sheriff's Department purchase orders to convince the suppliers of the H&K machineguns that the Lake County Sheriff's Department was the true purchaser of the H&K machineguns even though the defendants themselves provided the funds for the purchase of these H&K machineguns.

19. It was further part of the conspiracy that VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER acquired these H&K machineguns for a cost of between approximately $1200 and $1600 each.

20. It was further part of the conspiracy that when acquiring these machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER had all of the H&K machineguns shipped to the Lake County Sheriff's Department.

21. It was further part of the conspiracy that after acquiring these machineguns, all of the H&K machineguns were removed from the Lake County Sheriff's Department to the personal residence of RONALD D. SLUSSER.

22. It was further part of the conspiracy that after the H&K machineguns were at the personal residence of RONALD D. SLUSSER, he would remove the upper receivers (the barrel)

and any other additional parts that could be removed from the lower receiver (the firing mechanism of the H&K machinegun).

23. It was further part of the conspiracy that after removing the upper receivers and any other additional parts that could be removed from the lower receiver, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would sell on the internet to any willing purchaser, all of these upper receivers and additional parts. The sale of these upper receivers and parts would range from approximately $2,500 to $3800 each.

24. It was further part of the conspiracy that after removing the upper receivers, RONALD D. SLUSSER would return some of the upper receivers to VAHAN KELERCHIAN.

25. At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER have proper authority from the Lake County Sheriff's Department to engage in any of the above mentioned purchases or sales of the H&K machineguns or their parts.

26. At no time were any of the H&K machineguns obtained by VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER listed in the property inventory of the Lake County Sheriff's Department.

27. In furtherance of the conspiracy and to effect its objects:

**VAHAN KELERCHIAN,**

Defendant herein, together with JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, and others known and unknown to the grand jury performed the following:

<u>OVERT ACTS</u>

*First Machinegun Purchase*

a. On or about December 22, 2008, JOSEPH R. KUMSTAR issued a "Letter of Intent" on Lake County Sheriff's Department letterhead to H&K for (50)

additional H&K model 416 fully automatic machineguns. This letter of intent
stated these machineguns were for the "exclusive law enforcement use of the
Lake County Sheriff's Department" and that the "point of contact for all inquiries
in this matter will be Warrant Officer Ron Slusser." The letter then listed
RONALD D. SLUSSER'S home phone number. This letter was signed "Joseph
Kumstar, Chief of Police."

b. VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLSSER
used their personal funds to obtain these machineguns and did not have proper
authorization of the Lake County Sheriff's Department to purchase these
machineguns. These (50) machineguns were purchased for approximately $1650
each.

c. For this purchase, VAHAN KELERCHIAN provided payment to a third party
gun dealer in the amount of approximately $83,026.

d. Shortly after obtaining these (50) H&K fully automatic machineguns, RONALD
D. SLUSSER did cut up and remove the upper receiver barrels from these (50)
H&K fully automatic machineguns. Some of these upper barrels were sold on the
internet to any willing buyer with VAHAN KELERCHIAN, JOSEPH R.
KUMSTAR, and RONALD D. SLUSSER retaining the proceeds from this sale.
Some of the upper barrels were returned to KELERCHIAN.

e. In or about May of 2011, during the execution of an organized crime search
warrant by Montreal, Canada, gun and gang law enforcement officials, recovered
four upper barrels from this (50) H&K fully automatic machinegun purchase by
VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER.

7

The serial numbers on these upper receivers (barrels) listed the Lake County
Sheriff's Department as the registered owner.

*Second Machinegun Purchase*

f.  In or about February of 2009, JOSEPH R. KUMSTAR issued another "Letter of
    Intent" on Lake County Sheriff's Department letterhead to H&K for (9) H&K
    model MP5KN fully automatic machineguns. This letter of intent stated these
    machineguns were for the exclusive use of the Lake County Police Department.

g.  In or about February of 2009, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR
    and RONALD D. SLUSSER did cause a false and fictitious Lake County
    Sheriff's Department purchase order to be mailed or faxed, which represented the
    Lake County Sheriff's Department to be the purchaser of these machineguns even
    though it was not the true purchaser as required by law.

h.  For this purchase, VAHAN KELERCHIAN provided payment to H&K, the gun
    manufacturer /distributer in the amount of approximately $11,664.

i.  Shortly after obtaining these (9) H&K fully automatic machineguns, RONALD D.
    SLUSSER did cut up and remove the upper receiver barrels from these fully
    automatic machineguns. These upper barrels were sold to Person A in Utah.
    Person A paid Slusser $18,900 for these H&K parts. Slusser then paid $9450 to
    Kumstar and $9450 to Kelerchian. These payments to Kelerchian and Kumstar
    were paid because Kelerchain and Kumstar had fronted money for this purchase.

*Third Machinegun Purchase*

j.  In or about October 2009, JOSEPH R. KUMSTAR issued another "Letter of
    Intent" on Lake County Sheriff's Department letterhead for (12) H&K model

8

53A3 fully automatic sub-machineguns. This letter of intent stated these sub-machineguns would be the property of the Lake County Sheriff's Department and would not be resold or transferred, and would be used to carry out the official duties of the Lake County Sheriff's Department.

k. In or about October of 2009, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR and RONALD D. SLUSSER did cause another false and fictitious Lake County Sheriff's Department purchase order to be mailed or faxed, which represented the Lake County Sheriff's Department to be the purchaser of these sub-machineguns even though it was not the true purchaser as required by law.

l. Shortly after obtaining these (12) H&K fully automatic sub-machineguns, RONALD D. SLUSSER did cut up and remove the upper receiver barrels from these fully automatic machineguns. These upper barrels were sold to Person A in Utah. Person A paid Slusser $31,200 for these H&K parts. Slusser then paid Kelerchian $28,200. This payment to Kelerchain was made because Kelerchian had fronted the money for this purchase.

m. For this purchase, VAHAN KELERCHIAN provided payment to the H&K, the gun manufacturer/distributer, in the amount of approximately $16,800.

n. At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER have the proper permission of the Lake County Sheriff's Department to engage in any of the above three purchases or subsequent sales of these H&K sub-machineguns.

28. In the purchasing each of these (71) machineguns and sub-machineguns, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knowingly caused

false entries to be made in the books and records of the companies supplying these

firearms, in that these records reflected the Lake County Sheriff's Department as the

registered owner of these (71) firearms when in fact, VAHAN KELERCHIAN, JOSEPH

R. KUMSTAR, and RONALD D. SLUSSER knew that to be false.

All in violation of Title 18, United States Code 371 and 924(a)(1)(A).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 2

### (Conspiring to Defraud the Food and Drug Administration)

1. The Grand Jury realleges and reincorporates by reference paragraphs 1-11, of Count 1 as though fully set forth herein;

### OBJECT OF THE CONSPIRACY

2. Between on or about December 2008, and continuing through on or about September 2010, in the Northern District of Indiana and elsewhere:

### VAHAN KELERCHIAN,

defendants herein, did knowingly combine, conspire, confederate, and agree with JOSEPH KUMSTAR, RONALD D. SLUSSER, and with others known and unknown to the grand jury, to defraud the Food and Drug Administration (FDA), an agency of the United States, by interfering with and obstructing the lawful government functions of the FDA to:

   a. Limit the sale of various restricted laser aiming sight devices to the military and law enforcement agencies only;

   b. Correctly identify first line purchasers of various laser aiming sight devices which were restricted to military or law enforcement agency purchasers only.

All in violation of Title 18 United States Code, Section 371.

### HOW THE CONSPIRACY OPERATED

3. It was part of the conspiracy that JOSEPH R. KUMSTAR, and RONALD D. SLUSSER used their position as sworn law enforcement officers, along with VAHAN KELERCHIAN, to acquire approximately 74 (Seventy-Four) restricted laser aiming sight devices by fraudulently using the name of the Lake County Sheriff's Department and The Lowell, Indiana, Police Department, knowing that the Lake County Sheriff's Department and the Lowell Police Department were not the true owners of these restricted laser aiming devices.

4. It was further part of the conspiracy that when acquiring these restricted laser aiming sights, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER knew they could only be acquired by law enforcement agencies and not individual law enforcement officers.

5. It was further part of the conspiracy that when acquiring these (74) restricted laser aiming sight devices, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused false information to be recorded in the books and records of the Insight Technology, Inc., regarding who was the true first purchaser of these laser aiming sight devices. Furthermore, by causing false information to be recorded in the books records of the Insight Technology, Inc., VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER interfered with and obstructed the lawful government functions of the FDA to (a) limit the sale of various restricted laser aiming sight devices to only the military and law enforcement agencies and (b) correctly identify first line purchasers of these (74) various laser aiming sight devices, the sale of which was restricted to military or law enforcement agency purchases only.

12

6.  It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused to be submitted to Insight Technology, Inc., a false and fictitious Lake County Sheriff's Department purchase order for the purpose of inducing Insight Technology, Inc., to believe that these restricted laser sights were being purchased by the Lake County Sheriff's Department, when in fact the defendants were acquiring these restricted laser sights with their own personal funds and for their personal use and resale.

7.  It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused to be submitted to Insight Technology, Inc., a false and fictitious Lowell Police Department documents for the purpose of inducing Insight Technology, Inc., to believe that these restricted laser sights were being purchased by the Lowell Police Department, when in fact the defendants were acquiring these restricted laser sights with their own personal funds and for their personal use and resale.

8.  It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would submit to Insight Technology, Inc., a "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which falsely represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

9.  It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would submit to Insight Technology, Inc., a "IR Product Disclosure Agreement" which purported

13

to be signed by the proper authorities at the Lowell Police Department but in fact, falsely represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

10. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER caused false and fictitious Lake County Sheriff's Department purchase orders to be created which falsely represented that the restricted laser sights were being purchased by the Lake County Sheriff's Department.

11. It was further part of the conspiracy that when acquiring these restricted laser sights VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER would cause these restricted laser sights to be delivered to the Lake County Sheriff's Department or the Lowell Police Department rather than to their personal residences.

12. It was further part of the conspiracy that after acquiring these restricted laser sights, all of them were removed from the Lake County Sheriff's Department and the Lowell Police Department to the personal residence of either KUMSTAR or SLUSSER.

13. It was further part of the conspiracy that after these restricted laser sights were at the either KUMSTAR or SLUSSER's residence, RONALD D. SLUSSER would sell some these restricted laser sights on the internet to any willing purchaser. The sale of these restricted laser sights ranged from approximately $2,800 to $3000 each. Some of the restricted lasers aiming sights were retained by each of the defendants.

14. At no time did VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER have proper authority from the Lake County Sheriff's Department or the

Lowell Police Department to engage in any of the above mentioned purchases or sales of the restricted laser sights.

15. At no time were any of the restricted laser sights obtained by VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER listed in the property inventory of the Lake County Sheriff's Department or the Lowell Police Department.

16. In furtherance of the conspiracy and to effect its objects:

## VAHAN KELERCHIAN,

Defendant herein, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER, and other conspirators, known and unknown to the grand jury performed the following:

## OVERT ACTS

*First Laser Sight Purchase*

a. In or about December 6, 2008, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER ordered from Insight Technology Inc., approximately 25 various restricted laser sights having a value of approximately $27,000.

b. On or about December 6, 2008, JOSEPH R. KUMSTAR, submitted to Insight Technology, Inc., a "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

c. In or about December of 2008, JOSEPH R. KUMSTAR signed a false and fictitious Lake County Sheriff's Department purchase order inducing Insight Technology, Inc., to believe that the Lake County Sheriff's Department was the

15

true purchaser of these restricted laser sights even though the defendants themselves provided the funds for the purchase of these restricted laser sights.

d. In or about January of 2009, Insight Technology, Inc. shipped these restricted laser sights to the Lake County Sheriff's Department.

e. For this purchase, VAHAN KELERCHIAN provided payment to Insight Technologies Inc., in excess of $17,000.

f. After obtaining these restricted laser sights, RONALD D. SLUSSER sent back to VAHAN KELERCHIAN approximately 12 of these restricted laser sights.

g. After obtaining these restricted laser sights, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER sold via the internet some these restricted laser sights to any and all willing purchasers, including Keith Mitts.

h. On or about August 21, 2009, the Department of Defense Criminal Investigative Service (DCIS) engaged in a successful undercover purchase of a restricted laser sight being offered for sale on E-Bay by a Keith Mitts. DCIS undercover agents paid $4,200 for a restricted laser aiming sight which was traced back to the December 6, 2008, laser sight order from Insight Technology, Inc., which was sent to the Lake County Sheriff's Department. Subsequent to this undercover purchase, two additional restricted laser sights of the same model and type that were part of the December 6, 2008, laser sight order from Insight Technology, Inc., which was sent to the Lake County Sheriff's Department, were recovered from Mitt's Mississippi residence during Mitt's shooting and standoff with local police officers.

16

*Second Laser Sight Purchase*

    i.  In or about December 2009, the defendants ordered from Insight Technology Inc., approximately 12 restricted laser sights having a value of approximately $15,000.

    j.  On or about December 2009, RONALD R. SLUSSER submitted to Insight Technology Inc., an "IR Product Disclosure Agreement" which represented that the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

    k.  In or about January of 2010, Insight Technology, Inc. shipped these restricted laser sights and RONALD D. SLUSSER obtained these restricted laser sights.

    l.  For this purchase, VAHAN KELERCHIAN provided several payments to Insight Technologies Inc., totaling more than $15,000.

    m. After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet these restricted laser sights to any willing purchaser.

*Third Laser Sight Purchase*

    n.  In or about February 2010, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR, and RONALD D. SLUSSER ordered from Insight Technology Inc., approximately 22 various restricted laser sights having value of approximately $30,000.

    o.  On or about February 23, 2010, JOSEPH R. KUMSTAR submitted to Insight Technology Inc., an "IR Product Disclosure Agreement" signed by JOSPEH R. KUMSTAR which represented that the restricted laser sights being purchased

would "not be sold or transferred to individual law enforcement or civilian personnel."

p. In or about February 2010, VAHAN KELERCHIAN, JOSEPH R. KUMSTAR and RONALD SLUSSER created a false and fictitious Lake County Sheriff's Department purchase order inducing Insight Technology, Inc., to believe that the Lake County Sheriff's Department was the true purchaser of these restricted laser sights even though the defendants themselves provided the funds for the purchase of these the restricted laser sights.

q. In or about March 2010, Insight Technology, Inc. shipped these restricted laser sights to the Lake County Sheriff's Department.

r. For this purchase, VAHAN KELERCHIAN provided several payments to Insight Technologies Inc., totaling more than $25,000.

s. After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet some of these restricted laser sights to any willing purchaser.

t. Approximately 20 of these restricted laser sights were returned to VAHAN KELERCHIAN by RONALD D. SLUSSER.

*Fourth Laser Sight Purchase*

u. In or about July 2010, RONALD D. SLUSSER ordered from Insight Technology, Inc., approximately 15 restricted laser sights from Insight Technology Inc., having a value of approximately $18,000.

v. On or about July 6, 2010, RONALD R. SLUSSER submitted to Insight Technology, Inc., an "IR Product Disclosure Agreement" which represented that

the restricted laser sights being purchased would "not be sold or transferred to individual law enforcement or civilian personnel."

w. In or about August 2010, Insight Technology, Inc. shipped these restricted laser sights and RONALD D. SLUSSER subsequently retrieved them.

x. For this purchase, VAHAN KELERCHIAN provided payment to Insight Technologies Inc., in excess of $16,000.

y. After obtaining these restricted laser sights, RONALD D. SLUSSER sold via the internet these restricted laser sights to any willing purchaser and sent two of the sights back to VAHAN KELERCHIAN.

z. On August of 2010, a Special Agent of the FDA engaged in an undercover purchase of a restricted laser sight from RONDAL D. SLUSSER. This restricted laser sight was purchased by RONALD D. SLUSSER from Insight Technology, Inc., for approximately $1250.00 and sold to the FDA undercover agent for approximately $2900.00. An examination of the serial number for this sight revealed that it was part of the July 2010 order of 15 restricted laser sights that had been ordered by RONALD D. SLUSSER and paid for by VAHAN KELERCHIAN.

All in violation of Title 18 United States Code, Section 371.

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 3

### (Conspiracy to Make False Statements - Demonstration Letters)

From on or about October 2007, and continuing to in or about March 28, 2010, both dates being approximate and inclusive, in the Northern District of Indiana and elsewhere,

### VAHAN KELERCHIAN

defendant herein, and Joseph Kumstar, knowingly combined, conspired, confederated and agreed together and with each other, and with other persons known and unknown to the Grand Jury, to commit the following offenses against the United States: to willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, to wit: the Bureau of Alcohol, Tobacco, Firearms, and Explosives, false writings and documents to wit: approximately (7) letters on Lake County Sheriff's Department letterhead requesting firearm demonstrations of machine guns (demonstration letters) from VAHAN KELERCHIAN, knowing the same to contain a materially false, fictitious, and fraudulent statement because VAHAN KELERCHIAN very well knew that in fact no demonstration was going to occur.

In furtherance of this scheme, false demonstration letters were sent from Lake County Indiana, VAHAN KELERCHIAN and to the National Firearms Branch of the Bureau of Alcohol, Tobacco, and Firearms located in Martinsburg, WV., on the following approximate days: October 4, 2007, February 13, 2009, February 16, 2009, June 29, 2009, March 28, 2010.

All in violation of Title 18, United States Code Section 1001, and 371.

20

**THE GRAND JURY FURTHER CHARGES:**

## COUNTS 4-7

### (False Statements - Demonstration Letters)

On or about the following dates in the Northern District of Indiana and elsewhere,

## VAHAN KELERCHIAN

defendant herein, and Joseph Kumstar did willfully and knowingly make and cause to be made, and use and cause to be used, in a matter within the jurisdiction of a department or agency of the United States, to wit: the Bureau of Alcohol, Tobacco, Firearms, and Explosives, false writings and documents to wit: approximately (4) letters on Lake County Sheriff's Department letterhead requesting firearm demonstrations of various machine guns (demonstration letters) from VAHAN KELERCHIAN, knowing the same to contain a materially false, fictitious, and fraudulent statement because VAHAN KELERCHIAN very well knew that in fact no demonstration was going to occur, said letters being mailed from Lake County Indiana, to VAHAN KELERCHIAN in Pennsylvania and the the National Firearms Branch of the Bureau of Alcohol, Tobacco, and Firearms located in Martinsburg, WV., on the following approximate days:

| COUNT | DATE |
|-------|------|
| 4 | February 13, 2009 |
| 5 | February 16, 2009 |
| 6 | June 29, 2009 |
| 7 | March 28, 2010 |

All in violation of Title 18, United States Code, Section 1001 and 2.

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 8

### (Bribery)

1. At all times material to this indictment, the Lake County Sheriff's Department was an agency of a local government entity to wit: Lake County, Indiana, that received federal assistance in excess of $10,000 during the one-year period beginning January 2, 2008 and ending December 31, 2008.

2. Joseph Kumstar was an agent of Lake County Sheriff's Department acting as its Deputy Chief, in charge of operations, whose duties included overseeing and managing the Lake County Sheriff's Department.

3. On or about July 31, 2008, in the District of Indiana, and elsewhere,

### VAHAN KELERCHIAN

defendant herein, did corruptly give, offer, and agree to give a thing of value to wit: a Remington .12 Gauge short-barrel shotgun, to Joseph Kumstar, intending to influence and reward Joseph Kumstar in connection with a transaction and series of transactions of the Lake County Sheriff's Department involving $5,000 or more.

All in violation of Title 18, United States Code, Section 666(a)(2) and 2.

22

**THE GRAND JURY FURTHER CHARGES:**

**COUNT 9**

**(Conspiracy to Launder Monetary Instruments: 1956 and 1957)**

Beginning in or about February 2009 and continuing through in or about January 2010, both dates being approximate and inclusive, in the District of Indiana and elsewhere,

**VAHAN KELECHIAN**

Defendant herein, Joseph Kumstar, and Ronald Slusser, willfully and knowingly conspired and agreed together and with each other, and with others known and unknown to the Grand Jury, to commit certain offenses:

1) Under Title 18, United States Code § 1956, to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved proceeds of specified unlawful activity, that is mail and wire fraud, in violation of title 18  United States Code § 1341 and 1343: (1) with the intent to promote the carrying on of such specified unlawful activity and (2) knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and while conducting or attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity,  and

2) Under Title 18, United States Code § 1957, to conduct and attempt to conduct monetary transactions affecting interstate commerce, in criminally derived property of a value greater than

23

$10,000, such property having been derived from a specified unlawful activity, that is, mail and wire fraud, in violation of Title 18 United States Code § 1341 and 1343.

All in violation of Title 18 United States Code 1956(h), 1956(a)(1)(B)(i), 1957, and 2.

## FIRST FORFEITURE ALLEGATION

1. The allegations of Count One of the Indictment are realleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to the provisions of Title 18 United States Code, Section 924(d), and Title 28 United States Code, Section 2461(c).

2. Upon conviction of Count One of the Indictment, **Vahan Kelerchian**, defendant herein, shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 924(d), and Title 28, United States Code, Section 2461(c), any and all firearms involved in the commission of such offenses:

## SECOND FORFEITURE ALLEGATION

1.      The allegations contained in Count 9 of this Indictment are hereby re-alleged and

incorporated by reference for the purpose of alleging forfeiture  pursuant to Title 18, United

States Code, Sections 982(a)(1).

2.      Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an

offense in violation of Title 18, United States Code, Sections 1956 and 1957 , the defendant,

VAHAN KELERCHIAN, shall forfeit to the United States of America any property, real or

personal, involved in such offense, and any property traceable to such property.

3.      If any of the property described above, as a result of any act or omission

of the defendant:

a.      cannot be located upon the exercise of due diligence;
b.      has been transferred or sold to, or deposited with, a third party;
c.      has been placed beyond the jurisdiction of the court;
d.      has been substantially diminished in value; or
e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:


S/Foreperson
FOREPERSON


DAVID CAPP
UNITED STATES ATTORNEY



By:    S/Philip C. Benson
       Philip C. Benson
       Assistant United States Attorney

26