UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

v.    Case No.: 2:13-CR-66 JVB

VAHAN KELERCHIAN

**OPINION AND ORDER**

**A. Background**

Defendant, Vahan Kelerchian, is the principle owner and operator of Armament Services International, Inc. Armament Services sells firearms and related items. Mr. Kelerchian holds a class 3 federal firearms license allowing him to deal in fully automatic weapons under the restrictions of the Gun Control Act. Mr. Kelerchian is accused of having conspired to violate various federal laws concerning the sale of firearms and related equipment. He is also accused of bribery, money laundering, and making false statements.

While the Indictment charges him with nine counts, only the first two are the subject of this order. According to the government, Mr. Kelerchian and his co-conspirators, two former Lake County (Indiana) Sheriff's Department police officers, illegally acquired laser sights (Count 2) and H&K machine guns (Count 1). They resold the laser sights for profit; as for the machine guns, the defendants were interested only in the resale of their barrels, which are rare because only the military and law enforcement agencies may buy the machine guns.

The Indictment alleges that Mr. Kelerchian and his co-conspirators fraudulently represented to ATF and other federal firearms licensees that the machine guns were for the Lake County Sheriff's Department. To back up these claims, they used the Lake County Sheriff's

1

Department letterhead, fabricated Lake County Sheriff's Department purchase orders, and issued false letters in the name of the Sheriff's Department. The machine guns were shipped to the Sheriff's department but taken by the co-conspirators to their homes. There they removed the barrels and sold them. Some of the barrels were sent to Mr. Kelerchian. On the basis of these allegations, the Grand Jury charged Mr. Kelerchian with conspiracy to provide false information to other federal firearms licensees in violation of 18 USC §§ 371 and 924(a)(1)(A).

Mr. Kelerchian is also accused of conspiring to buy for resale restricted laser sights, under the guise that the sights were being purchased for a law enforcement agency. Once the sights were shipped to the purported purchasers, they would be intercepted and the accomplices would divide the spoils. On the basis of these allegations, Mr. Kelerchian is charged in Count 2 with conspiring to defraud the Food and Drug Administration (FDA), an agency of the United States, by interfering with and obstructing the lawful government function of the FDA. Mr. Kelerchian has moved to dismiss Counts 1 and 2 of the Indictment, arguing that they fail to state federal offenses. Also, as to Count 1, Mr. Kelerchian contends that, at worst, it should only be a misdemeanor charge.

**B. Count 1**

In urging the Court to dismiss Count 1, Mr. Kelerchian argues that there is no reporting requirement under § 924(a)(1)(A) for the transfer of individual unregulated firearm parts (presumably machine gun barrels). This argument overlooks the fact that Mr. Kelerchian's conspiracy did not merely entail the barrels; rather, the barrels came attached to the machine guns, and there was no other way to get them but through misrepresentation that the machine guns were being purchased by the Sherriff's department. Insofar as Mr. Kelerchian is alleged to

have conspired to make false statements to a federally licensed firearms dealer, statements that were likely to deceive the dealer as to the lawfulness of the sale, when acquiring these machine guns, Count 1 states a valid charge. Count 1 is not so much about the dissemination of the machine guns as about making a false statement to mislead the dealer that the guns were intended for the Sherriff's department. While Mr. Kelerchian presents Grand Jury testimony from one of the co-conspirators that the machine gun receivers were to stay in the Sherriff's department and that Mr. Kelerchian was interested only in the barrels, this changes nothing. First, the Grand Jury was not required to believe such testimony, and, second, this is not what was ultimately charged in Count 1. Regardless, even if the conspiracy had been only about the barrels, because they were imported into the country, as opposed to having been manufactured here, their sales were still restricted only to military or law enforcement agencies, and any attempt to deceive the federally licensed importer about the identity of the buyer violated § 924(a)(1)(A).

As the government suggests, Mr. Kelerchian's conduct is analogous to a straw purchaser of firearms, except that the roles of the characters are reversed. Whereas the straw purchaser claims to be buying firearms for himself, the conspiracy here was to claim that the firearms were bought for someone else, that is, the Sheriff's Department. If the facts prove to be otherwise, the jury will exonerate Mr. Kelerchian, but for the purposes of this order the ultimate facts are not material; rather, the Court only determines whether, as stated, Count 1 alleges a chargeable offense.

In the alternative, Mr. Kelerchian argues that, even if his conduct was controlled by the Gun Control Act, as a licensed dealer, he is subject only to misdemeanor punishment, as prescribed by 18 U.S.C. § 924(a)(3).[1] However, that is not the law in this Circuit:

> The Supreme Court has made clear that when multiple criminal statutes apply to the same conduct, the prosecutor has the discretion to choose under which statute to proceed. Neither is a defendant entitled to choose the penalty scheme under which he will be sentenced. In this case, the prosecutor in the exercise of her prosecutorial discretion chose to charge [the defendant] under the felony provision of the statute and not the misdemeanor provision, and it was within her discretion to do so.

*United States v. Rietzke*, 279 F.3d 541, 545--46 (7th Cir. 2002) (dismissing defendant's argument that, since he was a firearms dealer, the government had to charge him under the misdemeanor provision of § 924(a)(3)) (citations and quotation marks omitted).

### C. Count 2

Mr. Kelerchian argues that Count 2 does not state an offense pursuant to the "defraud" clause of 18 U.S.C. § 371 and must be dismissed. He notes that no statute restricts the sale of laser aiming devices to military or law enforcement agencies, and insists that applying § 371 in this case will open the doors for the government to prosecute just about anyone who interferes with a federal agency, no matter how slightly, no matter how remotely. Mr. Kelerchian recalls "Learned Hand [who] referred to the general conspiracy statute as the 'darling of the modern prosecutor's nursery,'" *Harrison v. United States*, 7 F.2d 259, 263 (2nd Cir. 1925), and questions how far the government's reach will be allowed.

Section 371 is far reaching indeed:

---

[1] Under this section, "[a]ny licensed dealer . . . who knowingly . . . makes any false statement or representation with respect to the information required by the provisions of this chapter to be kept in the records of a person licensed under this chapter . . . shall be fined under this title, imprisoned not more than one year, or both." 18 U.S.C. § 924(a)(3).

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

And as the number of agencies increases and their scope widens, so does the grasp of § 371.

Yet, political considerations aside, the question in this case is whether the government has sufficiently alleged that Mr. Kelerchian conspired with others to defraud an agency of the United States---the FDA---in any manner or for any purpose, and whether Mr. Kelerchian or his confederates did any act to effect the object of the conspiracy.

Mr. Kelerchian submits that the government's case is based upon the FDA's variance letter to Insight Technology, Inc., the manufacturer from whom Mr. Kelerchian and his cohorts purchased the laser sights. He argues that the government, not being able to rely upon any statute directly prohibiting the sales, is using the letter as if it were the criminal statute in force. In addition, Mr. Kelerchian maintains that the FDA's statutory and regulatory authority does not extend to purchasers, or at best, its authority is limited to civil enforcement.

But the government does not argue that the variance letter supplants the statute. Instead, it recognizes that the FDA has the authority and an interest in regulating radiation emitting products, such as laser sights. Its regulations have the force of law. For example, the FDA sets performance standards for laser products, 21 C.F.R. § 1040.10, and for specific purpose laser products, § 1040.11. Congress has backed up FDA's authority by making it unlawful---

> (1) for any manufacturer to introduce, or to deliver for introduction, into commerce, or to import into the United States, any electronic product which does not comply with an applicable standard prescribed pursuant to section 360kk of this title; [or]
>
> . . .
>
> (3) for any person to fail or to refuse to establish or maintain records required by this part or to permit access by the Secretary or any of his duly authorized

representatives to, or the copying of, such records, or to permit entry or inspection, as required by or pursuant to section 360nn of this title.

21 U.S.C. § 360oo.

The FDA also has rules for variances from its general standards. 21 C.F.R. §§ 1040.4, 1002. As relevant here, the FDA granted a variance to Insight to sell Class IIIb lasers without various safety precautions to military and law enforcement agencies (the sound, light, and coloring meant to warn about high radiation levels is generally incompatible with combat or law enforcement use). In turn, Insight had to agree that it would restrict the sales of the laser aiming sights to law enforcement agencies and that each sale and promotional literature would include a statement about such restrictions. Moreover, Insight agreed to keep a record of laser sight buyers.

This scheme allows the FDA to oversee the safe application of radio emitting devices among civilians, while monitoring the sales of devices without standard safety features. That is a legitimate function of the FDA. When, as alleged, Mr. Kelerchian agreed with others to lie to Insight about who the real purchaser of the laser sights was, they obstructed the FDA. Such deceit, craft, or trickery, if true, exposed Mr. Kelerchian to criminal liability under § 371.[2] Mr. Kelerchian's argument that the FDA's statutory and regulatory authority is limited to civil enforcement is unavailing.

---

[2] One of the co-conspirators attested at the time of the sale that the following statement was true:
> We/I hereby acknowledge that the sale of the IR LAM, (Laser Aiming Module), MR6-IR, M6X-IR, AN/PAQ-4C, AN/PEQ-2A, MTM-IR, ISM-IR, and CIL is regulated by the FDA (Food and Drug Administration) and all terms of sale must be complied with. Sale of these laser aiming lights is restricted to government, military, and law enforcement agencies under a direct purchase order from the agency and shall not be sold or transferred to individual law enforcement or civilian personnel. Use of this product is restricted to approved agencies. It is understood that it is the purchasing agency's responsibility to monitor possession of this equipment and that it will be disabled, destroyed, or returned to the manufacturer in the event that the agency's need for the equipment expires.

**D. Order**

For these reasons, the Court denies Mr. Kelerchian's motions to dismiss Counts 1 and 2 of the Indictment (DEs 62 & 63).

SO ORDERED on June 22, 2015.

  s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE