# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No.: 2:13-CR-66 JVB |
| VAHAN KELERCHIAN | |

## OPINION AND ORDER

### I.

Defendant Vahan Kelerchian was tried before a Jury on criminal allegations set out in a nine-count indictment. The charges were as follows:

- Count 1: Conspiracy to make false statements to a federal firearms licensee;

- Count 2: Conspiracy to defraud the FDA of its regulatory function regarding restricted laser sights;

- Count 3: Conspiracy to make false statements in demonstration letters;

- Counts 4—7: Making of the false statements in demonstration letters

- Count 8: Bribery; and

- Count 9: Conspiracy to commit money laundering.

The Jury found Kelerchian guilty of all counts except Count 8. As to Count 9, the Court took under advisement Kelerchian's motion for acquittal. Following the trial, and after some extensions of deadlines, the parties submitted briefs regarding their positions.

Kelerchian claims three grounds for acquittal: (1) the government did not present evidence of concealment or disguise as required by 18 U.S.C. § 1956; (2) there was no evidence that Kelerchian received any proceeds of unlawful activity as required by *United States v. Santos*,

553 U.S. 507 (2008); and (3) the facts regarding the underlying wire fraud charge and the facts regarding the money laundering allegations have been merged into one offense. Kelerchian also submits that Count 9 is confusing and vague, compounding the legal problems identified in his brief.

"A motion for judgment of acquittal should be granted only if there is insufficient evidence to sustain the jury's finding." *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002). Of course, the evidence has to be viewed in the light most favorable to the government and the conviction may be overturned only "if the record contains no evidence on which a rational jury could have returned a guilty verdict." *Id.* at 569--570.

## II.

Kelerchian stresses that Count 9 is "written in a convoluted and vexing manner." The plain-English advocates would have no problem agreeing but convoluted and vexing verbiage in an indictment does not by itself nullify a criminal charge. If a count states the elements of the crime, informs the defendant of the nature of the charge, and enables him to plead the judgment as a bar against future prosecutions for the same offense, the charge is legally sufficient. *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997). Here, Count 9 falls within these parameters, even though one may have to draw a diagram to figure it out. But then again, the convoluted language of the statutes upon which the count is based may be the wellspring of the problem.

Moreover, insofar as Kelerchian may now be challenging the phrasing of Count 9, the challenge is belated. Under Federal Rule of Criminal Procedure 12(b)(3)(B), motions

challenging an indictment must come before trial. In any case, the government's filing of a bill of particulars has mooted any objections to the sufficiency of Count 9.

**III.**

Kelerchian argues that the government did not present evidence of concealment or disguise as required by 18 U.S.C. § 1956 to sustain a charge for money laundering. Kelerchian's argument boils down to this: since it was rather easy to trace the funds that were moved around to their original source, the government failed to prove that there was any attempt to conceal or disguise the illegal money.

Count 9 charged a single conspiracy with two objects: to violate 18 U.S.C. § 1956(a)(1)(B)(1) (laundering of monetary instruments) and to violate § 1957 (engaging in monetary transactions in property derived from specified unlawful activity). In particular, Count 9 alleged that Kelerchian conspired with others to violate § 1956 by engaging in a financial transaction with the intent to promote the commission of wire fraud and knowing that the transaction was designed to conceal and disguise the proceeds of the wire fraud. Count 9 also alleges that the second object of the conspiracy was to violate § 1957 by conducting money transactions with illegally derived money. As the verdict shows, the jury found that the government proved both objects of the conspiracy. (DE 183, Jury's Verdict at 9.)

The court agrees with the government that it presented sufficient evidence for a reasonable jury to find that Kelerchian was guilty of Count 9 as charged. The firearms transactions were structured in such a way that Ronald Slusser would be a middle man between Adam Webber and Kelerchian and the payments from Slusser to Kelerchian would appear as routine business transactions. In fact, the scheme worked because the seller of the machine guns,

H&K, was in the dark about the real purchaser of the machine guns. Had it known that the guns weren't slated for the Lake County Sherriff's department, it would not have sold the guns. The fact that subsequently an investigator was able to retrace the path of the money changes nothing. As the government rightly observes, the statute requires only that proceeds be concealed, not that they be concealed well. *See United States v. Naranjo*, 634 F.3d 1198, 1210 (11th Cir. 2011). The Jury believed the transactions were structured to cover up their real nature and there's nothing in the record to compel the Court to nullify their finding as to the conspiracy to violate § 1956.

Similarly, the evidence is sufficient as to the conspiracy to violate § 1957. Congress enacted § 1957 in hopes of keeping dirty money out of commerce so it has no value. It is true, as argued by Kelerchian that *United States v. Santos*, 553 U.S. 507 (2008), with a 4-4-1 vote, relying on the rule of lenity, held that "proceeds" must be interpreted to mean the profits from an underlying offense, not gross receipts. But following that decision, the Congress clarified that "proceeds" means "gross receipts" for offenses committed after May 20, 2009. 18 U.S.C. § 1956(c)(9). As a result, *Santos*'s "net profits" definition of the proceeds applies only to money laundering transactions before May 20, 2009. Yet the conspiracy here spanned from February 2009 until January 2010. As the government points out in its brief, it proposed to include in the jury instructions a bifurcated definition of the term "proceeds," but Kelerchian ultimately settled for only the post May 20, 2009, definition. (*See* DE 178, Jury Instructions, No. 53, at 55 ("As to Count 9, the term "proceeds" means --- any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.").) Hence, Kelerchian's argument that the Court misapplied the law is without basis as is his argument that there was no evidence of proceeds as a result of the transactions presented at trial.

# IV.

Lastly, Kelerchian argues that a merger exists between the criminal activity that produced the proceeds in this case and subsequent transactions that give rise to the money laundering count. Both Kelerchian and the government agree that the acts that produce the proceeds being laundered must be distinct from the conduct that constitutes money laundering. However, they characterize the evidence on opposite sides of the spectrum.

Kelerchian maintains that the government advanced the theory that payment to Armament Services (Kelerchian's business) for the nine MP5s and the twelve MP3s were both wire fraud and money laundering, a merger, so to say, that the Supreme Court warned against in *Santos*, 553 U.S. at 516.

The government sees it differently: the wire fraud was accomplished once the machine guns arrived at the Lake County Sheriff's Department. At that point, the co-conspirators had total control over the firearms, and any subsequent financial transaction related to the machine guns involved proceeds derived from the completed wire fraud. That is, the subsequent sale of the machine guns to Weber and transfers of funds between Slusser and Kelerchian and between Kelerchian and H&K constituted money laundering.

The Court agrees with the government's characterization of the evidence, and, as a result, finds no basis for acquittal.

For these reasons and for the reasons laid out in the government's response brief, the Court denies Kelerchian's motion for acquittal (DE 208).

SO ORDERED on April 28, 2017.

                                         s/ Joseph S. Van Bokkelen
                                        JOSEPH S. VAN BOKKELEN
                                        UNITED STATES DISTRICT JUDGE