UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

v.                               CASE NUMBER: 2:13 CR 66

VAHAN KELERCHIAN

        Defendant.

DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE)
AND REQUEST FOR A HEARING

Defendant, VAHAN KELERCHIAN, by and through his attorney, respectfully requests this Court order his compassionate release to home confinement under 18 U.S.C. § 3582(c)(1)(A)(i) due to the "extraordinary and compelling reasons" confronting the Federal Bureau of Prisons (BOP) by the COVID-19 pandemic.[1] Mr. Kelerchian's term of imprisonment commenced on February 5, 2018. He is scheduled for release on March 11, 2025. Mr. Kelerchian is at a significant risk of contracting COVID-19 and suffering serious illness or death as he is almost sixty-one (61) years

---

[1] On or about April 7, 2020, Mr. Kelerchian wrote to Warden David E. Ortiz requesting release. On or about March 30, 2020 and April 8, 2020 respectively, Mr. Kelerchian's counsel wrote to Warden Ortiz requesting Mr. Kelerchian's release to home confinement. Mr. Kelerchian has not received a response from Warden Ortiz or the BOP to his request. At this time, Mr. Kelerchian exhausted available administrative remedies. Mr. Kelerchian's Motion is ripe for consideration by this Court as the First Step Act of 2018, Pub. L. No. 226-391, § 603, 132 Stat. 5194, 5238-40 (2018), permits courts to consider motions filed by defendants once "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Kelerchian satisfied the exhaustion of administrative rights.

of age and suffers from a history of respiratory conditions, including repeated sinus infections, lower respiratory infections, and bronchospasm, and diagnoses of hyperlipidemia, obesity, hypertension, chronic obstructive pulmonary disease (COPD), gout, sciatica, polyneuropathy, gastroesophageal reflux disease (GERD), osteoarthritis, plantar spurring of both of his heels, and an injury to the meniscus of his right knee, with ongoing pain, which limits his ability to walk. Accordingly, the global pandemic has created extraordinary and compelling reasons supporting his release to home confinement.

In support of his motion, Mr. Kelerchian represents the following:

1. After an October 2015 jury trial, Mr. Kelerchian was convicted of eight counts of nonviolent offenses related to conspiracy and making false statements. *See* ECF No. 216.

2. On February 5, 2018, Mr. Kelerchian was sentenced to one hundred (100) months incarceration followed by one (1) year of supervised release. *See* ECF No. 249.

3. Mr. Kelerchian was designated to serve his sentence at FCI – Fort Dix, a low security facility. FCI – Fort Dix is the most heavily populated BOP facility. Mr. Kelerchian's term of incarceration commenced on February 5, 2018. He is scheduled for release on March 11, 2025.

4. The ongoing global and national coronavirus pandemic, an extraordinary event that could not have been foreseen at the time of sentencing, makes Mr. Kelerchian's current state of confinement at FCI – Fort Dix extremely

dangerous. To date, the global infection rate from the COVID-19 pandemic has reached 26,337,473 people and claimed 869,331 lives.[2] The United States serves as the global front-runner of the COVID-19 pandemic with an infection rate of 6,151,253 and a death rate of 186,806.[3] These numbers increase exponentially each day. The State of New Jersey, home state of FCI – Fort Dix where Mr. Kelerchian is incarcerated, currently has 191,611 confirmed COVID-19 infections and 14,157 confirmed deaths.[4] The CDC issued guidance related to the potentially lethal effects of COVID-19 infections on certain high-risk individuals of the population. The CDC determined individuals suffering from conditions such as COPD and obesity "are at increased risk of severe illness from COVID-19" and those with hypertension or high blood pressure "might be at an increased risk for severe illness from COVID-19."[5] For individuals suffering from these conditions, such as Mr. Kelerchian, the CDC recommends, "[t]he best way to protect yourself and to help reduce the spread of the virus that causes COVID-19 is to: [l]imit your interactions with other people as much as possible [and] [t]ake precautions to prevent getting COVID-19 when you do interact with others."[6]

---

[2] *Coronavirus COVID-19 Global Cases,* Center for Systems Science and Engineering (CSSE) at Johns Hopkins University, https://coronavirus.jhu.edu/map.html (updating regularly)(accessed September 4, 2020, at 9:27 a.m.).
[3] *Id.*
[4] Official Site of the State of New Jersey, COVID-19 Information Hub, https://covid19.nj.gov/ (updating regularly) (accessed September 4, 2020 at 9:33 a.m.).
[5] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, (July 30, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[6] *Id.*

5. The CDC advises, "[t]he best way to prevent illness is to avoid being exposed to this virus."[7] In order to prevent exposure, the CDC recommends frequent handwashing with soap and water, utilizing hand sanitizer, avoiding close contact with others, covering the mouth and nose with a face cover when around others, covering coughs and sneezes, frequent cleaning and disinfecting heavily touched surfaces, and monitoring individual health.[8] The CDC further advises that social distancing, or "limiting close face-to-face contact with others is the best way to reduce the spread of coronavirus disease 2019 (COVID-19)."[9] In order to effectively practice social distancing, the CDC urges Americans to "stay at least 6 feet (about 2 arms' length) from other people."[10] Maintaining six feet of distance from others is near impossible among federal inmates. The CDC acknowledged the difficulty of preventing the introduction and spread of the coronavirus in prisons:

> There are many opportunities for COVID-19 to be introduced into a correctional or detention facility, including daily staff egress; transfer of incarcerated/detained persons between facilities and systems, to court appearances and to outside medical visits; and visits from family, legal representatives, and other community members. Some settings, particularly jails and detention centers, have high turnover, admitting new entrants daily who may have been exposed to COVID-19 in the surrounding community or other regions.[11]

---

[7] Centers for Disease Control and Prevention (CDC), How to Protect Yourself and Others (July 31, 2020) https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.
[8] *Id*.
[9] Centers for Disease Control and Prevention (CDC), Social Distancing (July 15, 2020) https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html.
[10] *Id*.
[11] *Id*.

6. Attorney General William Barr issued a memorandum directed to the Director of the Bureau of Prisons (BOP) on March 26, 2020 instructing, "there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities" due to the present COVID-19 pandemic.[12] Attorney General Barr urged the Director of the BOP to "prioritize the use of [the Director's] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic."[13] The March 26, 2020 memorandum instructs inmates to be granted release "based on the totality of circumstances" and when "transfer to home confinement is likely not to increase the inmate's risk of contracting COVID-19," which is the case for Mr. Kelerchian. Here, Mr. Kelerchian will be at a considerably decreased risk of infection from COVID-19 while under the care and supervision of his wife, family, and doctor, at home.

7. Attorney General Barr released a second memorandum on April 3, 2020, urging the BOP to prioritize the release of at-risk inmates confined in federal correctional facilities with high rates of COVID-19 infections.[14]

8. Mr. Kelerchian is detained in a densely populated federal correctional complex and is particularly vulnerable to complications from COVID-19 as he is almost sixty-one (61) years of age and suffers from a history of respiratory conditions,

---

[12] Attorney General William Barr, *Memorandum for Director of Bureau of Prisons* (March 26, 2020), https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf.
[13] *Id.*
[14] Attorney General William Barr, *Memorandum for Director of Bureau of Prisons* (April 3, 2020), https://www.justice.gov/file/1266661/download.

5

including repeated sinus infections, lower respiratory infections, and bronchospasm, and diagnoses of hyperlipidemia, obesity, hypertension, COPD, gout, sciatica, polyneuropathy, osteoarthritis, plantar spurring of both of his heels, an injury to the meniscus of his right knee, and pain, which limits his ability to walk.

9. The United States Sentencing Guidelines provide that reasons beyond medical illness, age, and family circumstances can qualify as "extraordinary and compelling reasons" for resentencing.[15]

10. United States District Courts across the nation have granted compassionate release to inmates suffering the same medical conditions as Mr. Kelerchian. *See United States v. Bess*, No. 1:16-CR-00156-LJV-MRJ at, *17 (W.D.N.Y. April 22, 2020) (released inmate suffering diabetes, hypertension, congestive heart failure, severely depressed ventricular function, and coronary artery disease); *United States v. Ben-Yhwh*, 1:15-CR-00830-LEK at, *13-14 (D. Haw. April 13, 2020)(inmate suffering from diabetes, high blood pressure, cardiac problems, high cholesterol, arthritis, asthma, Parkinson's Disease, and glaucoma released); *United States v. Hansen*, No. 1:07-CR-00520-KAM (E.D.N.Y. April 9, 2020) (release granted to inmate with a variety of diagnoses including diabetes, hypertension, and hyperlipidemia); *Samy v. United States*, No. 2:16-CR-20610-AJT-DRG, at *10 (E.D. Mich. April 16, 2020) (continuing incarceration for inmate suffering from medical diagnoses including hypertension and Type II diabetes "under the current circumstances could be a lethal decision"); *United States v. Zukerman*, No. 1:16-CR-

---

[15] *See* U.S.S.G. § 1B1.13 comment. n.1(A)-(D).

00194-AT at, *11 (S.D.N.Y. April 3, 2020) (inmate suffering hypertension and obesity among other diagnoses released); *United States v. Copeland*, No. 2:05-CR-00135-DCN at, *7, 9 (D.S.C. March 24, 2020) (inmate suffering adult onset diabetes, obesity, and previous diagnosis and treatment for prostate cancer released); *United States v. McCarthy*, No. 5:92-CR-00070-JCH at, *3 (D. Conn. April 8, 2020) (release of 65-year-old inmate suffering "a host of medical ailments" including COPD and asthma); *Miller v. United States*, No. 16-20222-1 at, *1-2 (E. D. Mich. April 9, 2020) (release of inmate with diagnoses of coronary artery disease, COPD, Hepatitis C, hypertension, cirrhosis of the liver, heart disease, and liver cancer); *United States v. Burrill*, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *1 (N.D. Cal., April 10, 2020) (inmate suffering high cholesterol, diabetes, high blood pressure, diverticulosis, asthma, cataracts, glaucoma, hearing loss, blood clots, and lower back nerve pain released); *United States v. Sawicz*, No. 08-cr-287, 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020) (inmate suffering hypertension released); *United States v. Smith*, No. 1:12-CR-00133-JFK at, *1-2 (S.D.N.Y. April 13, 2020) (62-year-old inmate suffering high cholesterol, asthma, a thyroid condition, blood clots, and suspected multiple myeloma released); *United States v. Kataev* At, No. 16-CR-763-05 (LGS) at, *4 (S.D.N.Y. April 15, 2020) (inmate suffering "chronic sinusitis, which affects breathing" released); *United States v. Coker*, No. 3:14-CR-085 at, *1-2 (E.D. Tenn. April 15, 2020) (release of 52-year-old inmate suffering from COPD); *United States v. Gileno*, No. 3:19-CR-161-(VAB)-1at, 1, 6 (D. Conn. April 20, 2020) (inmate suffering "chronic asthma and other respiratory issues […] multiple bouts of pneumonia as an adult," high

7

cholesterol, a thyroid condition, blood clots, and suspected multiple myeloma released); *United States v. Joling*, No. 6:11-CR-60131-AA at, *1-2, 8 (D. Or. April 17, 2020) (released inmate with diagnoses of hypertension, past transient ischemic attacks, obesity, past left lower extremity fracture, atherosclerosis); *United States v. Scparta*, No. 18-CR-578 (AJN) at, *2-3 (S.D.N.Y. April 20, 2020) (immediate release granted to 55-year-old inmate suffering from high cholesterol, sleep apnea, high blood pressure, and hypertension); *United States v. Coles*, No. 00-CR-20051 at, *1, 3 (C.D. Ill. April 24, 2020) (inmate suffering prostate and bladder issues, pulpitis (dental infection), and hypertension released); *United States v. Williams*, No. 3:17-CR-121-(VAB)-1 at, *1, 6 (D. Conn. April 24, 2020) (inmate suffering hypertension, attention deficit hyperactivity disorder (ADHD), chronic asthma, high cholesterol, and a history of treatment for kidney issues and triple bypass surgery released).

11. Even federal prosecutors are conceding the risks to inmates posed by the present pandemic coupled with chronic medical conditions warrants compassionate release. *See Wise v. United States*, No. CR ELH-18-72, 2020 WL 2614816, at *7 (D. Md. May 22, 2020) ("[J]ust last week, the Department of Justice adopted the position that any inmate who suffers from the chronic conditions associated with severe illness from COVID-19 are eligible for compassionate release."); *United States v. Wright*, No. CR TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) ("The Government now agrees, based on recent Department of Justice guidance, that Wright's diabetes condition, and perhaps other medical conditions she presently has, could constitute 'extraordinary and compelling reasons' under the circumstances of the COVID-19

8

pandemic."); *U.S. v. Esparza*, 2020 WL 1696084, at *3 (D. Idaho Apr. 7, 2020) ("The presence of COVID-19 . . . necessitates a more expansive interpretation of what self-care means"); *United States v. Atkinson*, 2020 WL 1904585, at *3 (D. Nev. Apr. 17, 2020)(citing *Esparza*, 2020 WL 1696084, at *3) ("The presence of COVID-19 . . . necessitates a more expansive interpretation of what self-care means" to include COVID-vulnerability coupled with the inability to practice CDC-recommended procedures to safeguard against transmission); *see also*, Government's Response in Opposition to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), *United States v. Hird*, Case No. 2:13-CR-39-TJS, ECF. No. 650, (E.D. Pa. May 19, 2020) (government concession that "the risk of COVID-19" to a vulnerable inmate "presents 'a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility'").

12. District courts across the nation recognize the danger to inmates incarcerated specifically at FCI – Fort Dix where Mr. Kelerchian is currently serving his sentence and have granted compassionate release to many of the facility's inmates. *See, e.g.*, *United States v. Al-Jumail*, No. 12-20272 (E.D. Mich. May 12, 2020) (60-year-old non-violent inmate at FCI – Fort Dix suffering from high blood pressure, high cholesterol, coronary arterial disease, retinal disease, and underwent placement of heart stents who took "advantage of beneficial prison programs" and demonstrated "evidence of post-sentencing rehabilitation" released); *United States v. Pena*, 2020 WL 2301199 (S.D.N.Y. May 8, 2020) (60-year-old inmate at FCI – Fort

9

Dix suffering from hypertension and hyperlipidemia released, concluding: "This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension."); *United States v. Copeland*, No. 1:03-CR-01120-FB at, *6 (E.D.N.Y. May 19, 2020) (inmate at FCI – Fort Dix with diagnoses of hyperlipidemia, vitamin D deficiency, hypertension, pre-diabetes, and latent tuberculosis infection released); *United States v. DeBartolo*, No. 14-016 WES at, *3 (D.R.I. June 11, 2020) (FCI – Fort Dix inmate suffering hypertension and kidney disease granted release as "hypertension increases the relative risk of mortality two-fold for a patient hospitalized with COVID-19, as compared with those without hypertension" released); *Woodward v. United States*, No. 2:12-CR-00105-RAJ-DEM at, *6 (E.D. Va. June 26, 2020) (FCI – Fort Dix inmate granted release due to diagnoses of obesity, heart conditions, and diabetes as "the Court is aware of the growing evidence of the BOP's chronic mismanagement of its vulnerable population during the COVID-19 pandemic."); *United States v. McCalla*, No. 3:11-CR-00452-FLW (D.N.J. July 2, 2020) (inmate at FCI – Fort Dix suffering chronic asthma, high blood pressure, chest pains, renal disease, and overweightness granted release); *United States v. Browne*, No. 1:14-CR-10369-LTS (D. Mass. July 2, 2020) (52-year-old inmate suffering from hypertension, sleep apnea, hyperlipidemia, asthma, diabetes, pancreatitis, and obesity and serving a sentence at FCI – Fort Dix on firearms related offenses deemed not a danger to the community and granted release); *United States v. Adeyemi*, No. 2:06-CR-00124-MAK (E.D. Pa. July 6, 2020) (34-year-old inmate at FCI – Fort Dix suffering chronic asthma and bronchospasms

released); *United States v. Hayes*, No. 2:17-CR-20292-DML-EAS (E.D. Mich. July 15, 2020) (inmate at FCI – Fort Dix "has advanced sufficiently compelling circumstances to warrant a sentence reduction based on his severe obesity, which is further complicated by his 'moderate persistent' asthma and sleep apnea, and which places him at seriously elevated risk from COVID-19 infection."); *United States v. Amaro*, No. 1:16-CR-00848-KPF at, *9 (S.D.N.Y. July 14, 2020) ("significant co-morbidities" and "deep-seated mental health issues, taken together, constitute extraordinary and compelling reasons for […] release from custody" of an inmate incarcerated at FCI – Fort Dix); *United States v. Chappell*, No. 1:16-CR-00512-LTS at, *4 (S.D.N.Y. July 21, 2020) (COVID-19 crisis and FCI – Fort Dix inmate's "obesity, and immunosuppressive therapies, and age combine to constitute extraordinary and compelling circumstances"); *United States v. Robinson*, No. 3:10-CR-00261-MHL (E.D. Va. July 17, 2020) (release granted to 46-year-old inmate at FCI – Fort Dix suffering from hypertension as "it is undisputed that 'hypertension is one of the most common "comorbidities" in people who experience severe cases of COVID-19'") (internal citations omitted).

13. The Northern District of Indiana is recognizing the need to both reduce the prison population and protect medically vulnerable inmates like Mr. Kelerchian from COVID-19 exposure. *See, e.g., United States v. Johnson*, No. 2:14-CR-80, 2020 WL 4048140, at *1 (N.D. Ind. July 17, 2020) (43-year-old inmate suffering high cholesterol, high blood pressure, gout, and chronic kidney disease granted release); *United States v. Jackson*, No. 2:18-CR-00086-PPS-APR at, *4,6, ECF 84, 2020 WL

11

3396901, (N.D. Ind. June 19, 2020) (release granted to 31-year-old inmate suffering from obesity, hypertension, and a history of respiratory conditions, including chronic bronchitis); *United States v. Hayden*, No. 1:07-CR-68-HAB, 2020 WL 4218503, at *1-2 (N.D. Ind. July 23, 2020) (COVID-19 constitutes extraordinary and compelling reason to grant release to a 38-year-old inmate with chronic kidney disease).

14. Courts in our neighboring districts across the Seventh Circuit are reducing sentences and granting release to inmates suffering comparable medical diagnoses. *See, generally, United States v. Mahoney*, No. 10-CR-95, 2020 WL 4430571 (N.D. Ill. July 31, 2020); *United States v. Miller*, No. 17-CR-30032, 2020 WL 4334798 (C.D. Ill. July 28, 2020); United *States v. Shelton*, No. 05-30010-001, 2020 WL 4193113 (C.D. Ill. July 21, 2020); *United States v. Miller*, No. 18-CR-30034, 2020 WL 4366088 (C.D. Ill. July 30, 2020); *United States v. Grant*, No. 16-30021-001, 2020 WL 4036382 (C.D. Ill. July 17, 2020); *United States v. Kirschner*, No. 1:10-CR-00203-JPH-MJD-01, 2020 WL 4004059 (S.D. Ind. July 15, 2020); *United States v. Leverette*, No. 97-CR-225, 2020 WL 4057425 (E.D. Wis. July 20, 2020); *United States v. Ikegwuonu*, No. 15-CR-WMC-2, ECF 123 (W.D. Wis. July 31, 2020); *United States v. Ramsey*, No. 18-CR-163, 2020 WL 3798938 (E.D. Wis. July 7, 2020); *United States v. Shannon*, No. 13-CR-535, 2020 WL 3489491 (N.D. Ill. June 26, 2020); *United States v. Young*, No. 14-CR-30024-2, 2020 WL 3605025, (C.D. Ill. July 2, 2020); *United States v. Tate*, No. 17-CR-30037, 2020 WL 3791467 (C.D. Ill. July 7, 2020); *United States v. Rainone*, No. 09-CR-206-1, 2020 WL 3468307 (N.D. Ill. June 19, 2020); *United States v. Kidd*, No. 19-CR-27-JPS, 2020 WL 3270850 (E.D. Wis. June 17,

2020); *United States v. Harris*, No. 06-CR-30058, 2020 WL 3483559 (C.D. Ill. June 26, 2020); *United States v. Gakhal*, No. 15-CR-470-1, 2020 WL 3529904 (N.D. Ill. June 30, 2020); *United States v. Chapman*, No. 10-CR-642, 2020 WL 2850984 (N.D. Ill. June 2, 2020); *United States v. Hodges*, No. 04-CR-993-3, 2020 WL 2935101 (N.D. Ill. June 3, 2020); *United States v. Body*, 18-CR-503-1, 2020 WL 2745972 (N.D. Ill. May 27, 2020); *United States v. Coles*, No. 00-CR-20051, 2020 WL 1976296 (C.D. Ill., April 24, 2020); *United States v. Halliburton*, No. 17-CR-20028, 2020 WL 3100089 (C.D. Ill. June 11, 2020); *United States v. Guzman*, No. 13-CR-576-1, 2020 WL 2781713 (N.D. Ill. May 28, 2020); *United States v. Lacy*, No. 15-CR-30038, 2020 WL 2093363 (C.D. Ill. May 1, 2020); *United States v. Ginsberg*, No. 14-CR-462, 2020 WL 2494643 (N.D. Ill., May 14, 2020); *United States v. Schneider*, No. 14-CR-30036, 2020 WL 2556354 (C.D. Ill. May 20, 2020); *United States v. Lewellen*, No. 09-CR-0332 (-2), 2020 WL 2615762 (N.D. Ill. May 22, 2020); *United States v. Davis*, No. 06-20020-002, 2020 WL 4049980 (C.D. Ill. July 20, 2020); *United States v. Hayes*, No. 09-CR-1032, 2020 WL 3790615 (N.D. Ill. July 7, 2020); *United States v. Common*, No. 17-CR-30067, 2020 WL 3412233 (C.D. Ill. June 22, 2020); *United States v. Fettis*, No. 17-CR-30003, 2020 WL 3027198 (C.D. Ill. June 5, 2020); *United States v. Hansen*, No. 17-CR-50062, 2020 WL 2219068 (N.D. Ill. May 7, 2020); *United States v. Early*, No. 09-CR-282, 2020 WL 2112371 (N.D. Ill. May 4, 2020); *United States v. Pinkerton*, No. 15-CR-30045-3, 2020 WL 2083968 (C.D. Ill., April 30, 2020); *United States v. Mabry*, No. 14-CR-116-1, 2020 WL 4015315 (N.D. Ill. July 16, 2020).

15. The Eighth Amendment of the United States Constitution prohibits the federal government from inflicting cruel and unusual punishment on Mr. Kelerchian. Unreasonable risk of COVID-19 contraction will, in itself, constitute an Eighth Amendment violation. The Supreme Court of the United States similarly held that inmates can bring an Eighth Amendment claim when they are subjected to involuntary and unreasonable exposure to a toxin that threatens the inmate's health. *Helling v. McKinney*, 509 U.S. 25 (1993). Unreasonable risk of COVID-19 contraction will, in itself, constitute an Eighth Amendment violation.

16. Given that Mr. Kelerchian is almost sixty-one (61) years of age and suffers from significant underlying health conditions that make him exceptionally vulnerable to COVID-19, extraordinary and compelling circumstances exist to support a reduction of his sentence to time-served with the remaining portion of the original term of imprisonment to be served as immediate supervised release to home confinement.

17. Since 2004, Mr. Kelerchian treated with Louis J. Gringeri, D.O. of Gringeri Family Medicine. After a thorough evaluation of Mr. Kelerchian's medical file, Dr. Gringeri stated in a letter dated April 4, 2020, "[t]he patient has repeatedly been diagnosed with sinusitis, lower respiratory infections, bronchial spasms and shortness of breath. Under CDC guidelines he is more volnerable (sic) to coronavirus and if he contracts it more likely to die." A true and correct copy of the April 4, 2020 letter written by Louis J. Gringeri, D.O. is attached hereto as Exhibit A. Mr. Kelerchian's respiratory problems were so severe during his treatment with Dr.

Gringeri, at the recommendation of Dr. Gringeri, on May 7, 2014, Mr. Kelerchian underwent a submucous resection nasal septum and nasal reconstruction and submucous resection of the right inferior turbinate operation performed by Jeffrey Briglia, D.O. at The Ambulatory Surgery Center at St. Mary.

18. Dr. Gringeri had an opportunity to evaluate Mr. Kelerchian's medical records from FCI – Fort Dix. A true and correct copy of the June 25, 2020 letter written by Louis J. Gringeri, D.O. is attached hereto as Exhibit B. Prior to his incarceration, Dr. Gringeri treated Mr. Kelerchian for "sinus infections, lower respiratory infections, bronchospasm, allergies, sciatica, hyperlipidemia, and gout." *Id.* Dr. Gringeri stated clearly in his June 25, 2020 letter: "*At no time has Vahan had hypertension.*" *Id.* (emphasis added). Mr. Kelerchian's medical records from the medical center of FCI – Fort Dix reveal that Mr. Kelerchian now also has hypertension and, more recently, COPD. Not only did Mr. Kelerchian enter FCI – Fort Dix with underlying medical conditions, but his health actually deteriorated during the past thirty-one months of his incarceration. According to Dr. Gringeri, Mr. Kelerchian's "multiple chronic health conditions," including hyperlipidemia, hypertension, age, obesity, being on Omeprazole, and increased uric acid, "place him at a greatly increased risk of developing serious complications and death if he were to contract SARS-CoV-2." *Id.* Dr. Gringeri urges "[b]ecause of Vahan's numerous health risks, and the need to protect him from SARS-CoV-2 by following the CDC guidelines which include social distancing, I respectfully request that Vahan be

released to home confinement." *Id.* Should he be granted compassionate release, Mr. Kelerchian will promptly resume treatment with Dr. Gringeri.

19. Mr. Kelerchian has a verifiable release plan to ensure his safe transition back into the community, which is more fully set forth in the corresponding Memorandum. Upon release, Mr. Kelerchian will live with his wife of thirty-two (32) years, Maura Kelerchian, and their two daughters at the same home in Pennsylvania where the family has resided since 1997. Mr. Kelerchian's family is fully committed to ensuring his full and complete compliance with the conditions of his release and peaceful transition back into the community. Should Mr. Kelerchian be permitted to work upon his release and after the COVID-19 health crisis is controlled, he has been offered an opportunity at a local jewelry store near his home owned by a friend of his family who is also committed to assisting him with following any and all terms of his release. As the Honorable Joseph S. Van Bokkelen noted at Mr. Kelerchian's February 5, 2018 sentencing hearing: "It appears that upon release from prison, Mr. Kelerchian will have a solid network of support." *United States v. Vahan Kelerchian*, No. 2:13-CR-66, Transcript of Sentencing Hearing, Volume II Before the Honorable Joseph S. Van Bokkelen United States District Judge (N.D. Ind. Feb. 5, 2018) at p. 13.

20. Mr. Kelerchian has no prior criminal history, no gang affiliations, no history of violence, and no disciplinary infractions during his time of incarceration. His crimes of conviction involve eight counts of nonviolent offenses related to conspiracy and making false statements. As such, Judge Van Bokkelen

recommended he serve his term of incarceration in a Low Security Facility, FCI - Fort Dix. His PATTERN score is 3. Since the commencement of his incarceration, Mr. Kelerchian participated in numerous programming opportunities and classes including Spanish I, Spanish II, Business Communication, 7 Habits of Highly Effective People, Essay Writing, Restaurant Management, and General Science. He received Certificates for his participation in Diabetes Awareness & Prevention and Talking With Your Doctor classes, as well as a Certificate of Achievement for his exemplary performance in the "Just Say No" eight week program at FCI – Fort Dix. He continues to seek educational opportunities and is currently on the waitlist for a class entitled Criminal Thinking Errors, as educational programs have been suspended due to COVID-19. Mr. Kelerchian held jobs in the FCI – Fort Dix electrical shop and as an afternoon groundskeeper. Upon release, he will promptly resume treatment with his family physician, Louis Gringeri, D.O. of Gringeri Family Medicine, P.C. for his extensive chronic and deteriorating medical conditions including repeated sinus infections, COPD, lower respiratory infections, bronchospasm, hyperlipidemia, hypertension, obesity, GERD, polyneuropathy, gout, sciatica, osteoarthritis, and a decreased ability to walk due to plantar spurring on both of his heels and an injury to the meniscus of his right knee. Upon release, Mr. Kelerchian will promptly undergo sleep apnea and diabetes testing as recommended by the medical staff at FCI – Fort Dix. Risk of recidivism for Mr. Kelerchian upon release would be virtually zero (0) percent. Given his nonexistent criminal history, nonexistent history of violence, advanced age, chronic and rapidly deteriorating

medical conditions, low PATTERN score, exemplary conduct in prison and verifiable release plan, it is within the interest of this Court and the FCI – Fort Dix community to release Mr. Kelerchian to his home and family so he may obtain the medical care he requires and prevent him from serious illness or death should he be exposed to COVID-19.

21.     Mr. Kelerchian respectfully requests this Court schedule oral argument on his Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release) and Request for a Hearing.

WHEREFORE, Vahan Kelerchian respectively requests this Court order his immediate release from incarceration to home confinement.

Respectfully submitted:

/s/ Kerry C. Connor
Kerry C. Connor
Attorney for Defendant Vahan Kelerchian
9013 Indianapolis Blvd., Suite C
Highland, IN 46321
Telephone: (219) 972-7111
Facsimile: (219) 972-7110
Email: kcconnor@sbcglobal.net

## CERTIFICATE OF SERVICE

      I hereby certify that on September 10, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

                                             <u>/s/ Kerry C. Connor</u>
                                             Kerry C. Connor