UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

v.                                  CASE NUMBER:  2:13 CR 66

VAHAN KELERCHIAN

        Defendant.

**REPLY IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE) AND REQUEST FOR A HEARING**

Comes Now Defendant, VAHAN KELERCHIAN, by and through his attorney Kerry C. Connor and files this reply to the *Government's Response to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. §3582(c)(1)(A)(i)*. [DE 265]. Mr. Kelerchian requests that the Court grant his request for compassionate release and, in the alternative, grant a hearing on his motion for compassionate release. [DE 262, 263].

I.    INTRODUCTION

The Government is asking this Court to disregard Mr. Kelerchian's serious and chronic health conditions, recognized COVID-19 risk factors, the recommendations of his doctor of more than a decade and the medical staff at FCI-Fort Dix and to, in effect, impose what could very likely be a death sentence on Vahan Kelerchian. The Government's predominant focus is not on the merits of Mr. Kelerchian's motion for compassionate release, but on an attempt to relitigate the

October 2015 jury trial – over ten pages of its seventeen-page Response[1] is spent asserting its various positions regarding the underlying case. Regardless, from indictment to sentencing, the charges and subsequent convictions advanced against Mr. Kelerchian involved *nonviolent* offenses. The Government should not be permitted to exploit the COVID-19 global health pandemic as a means of imposing an unduly cruel sentence on Mr. Kelerchian – a sentence that includes likely exposure to a dangerous disease followed by serious illness and/or death.

Vahan Kelerchian's case has been before this Court since at least 2013 and this Court is very familiar with the facts proven at trial. At the February 5, 2018 sentencing hearing, this Court recognized Mr. Kelerchian's good nature, nonexistent criminal history, lifetime of peaceful conduct in the community, and low risk of recidivism; and, accordingly, imposed a lower sentence than sought by the Government and designated Mr. Kelerchian to a low security prison.[2] Now, Mr. Kelerchian asks this Court to once again exercise its discretion to recognize the very real threat COVID-19 poses to his health and safety. At sixty-one (61) years of age, Mr. Kelerchian is an elderly inmate and suffers from a history of respiratory conditions, including repeated sinus infections, lower respiratory infections, and

---

[1] Government's Response to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) will hereinafter be referred to as "Gov.'s Res."

[2] *See United States v. Vahan Kelerchian*, No. 2:13-CR-66, Transcript of Sentencing Hearing, Volume II Before the Honorable Joseph S. Van Bokkelen United States District Judge (N.D. Ind. Feb. 5, 2018); *see also United States v. Vahan Kelerchian*, No. 2:13-CR-66, Memorandum in Support of Defendant's Emergency Motion To Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release) and Request for a Hearing, (ECF Doc. No. 263), at *4 (N.D. Ind. September 10, 2020), which will be referred to hereinafter as "Def's. Mem."

bronchospasm, and diagnoses of hyperlipidemia, obesity, hypertension, chronic obstructive pulmonary disease (COPD), gout, sciatica, polyneuropathy, gastroesophageal reflux disease (GERD), osteoarthritis, plantar spurring of both of his heels, and an injury to the meniscus of his right knee, with ongoing pain, which limits his ability to walk. FCI-Fort Dix has demonstrated that it is unable to adequately care for Mr. Kelerchian's medical conditions in light of the ongoing and worsening pandemic, particularly in its failure to administer timely testing for diabetes and sleep apnea. The growing precedent set forth by district courts across the nation coupled with Mr. Kelerchian's chronic medical conditions, COVID-19 risk factors, nonexistent prior criminal history or history of violence, flawless incarceration disciplinary history, and verifiable release plan overwhelmingly supports Mr. Kelerchian's release to home confinement.

## II. ARGUMENT

### A. Mr. Kelerchian has exhausted his administrative remedies.

The Government has asked for evidence confirming Mr. Kelerchian has exhausted available administrative remedies. A true and correct copy of the correspondence between and on behalf of Mr. Kelerchian and Warden David C. Ortiz is attached as **Exhibit A**. At the time of the correspondence, Mr. Kelerchian's PATTERN score was 6, however it has since been lowered to 3.

**B. Mr. Kelerchian has more than demonstrated his chronic health conditions coupled with the COVID-19 pandemic constitute an extraordinary and compelling reason to warrant compassionate release.**

Ignoring the overwhelming and growing precedent supporting Mr. Kelerchian's release,³ the Government relies on outdated case law wherein the assessment of the "extraordinary and compelling reasons" provision of 18 U.S.C. § 3582(c)(1)(A)(i) predates the COVID-19 pandemic. The Government fails to take into account the March 26, 2020 and April 3, 2020 memoranda of Attorney General William Barr instructing the Director of the Bureau of Prisons (BOP) to prioritize the release of non-violent at-risk inmates to home confinement, the CARES Act, or the hundreds of cases and counting of district courts granting compassionate release to medically vulnerable inmates just like Mr. Kelerchian.⁴

Additionally, the Government suggests Mr. Kelerchian must provide medical records in order to demonstrate extraordinary and compelling circumstances. First, the Government fails to reference the authority that specifically requires Mr. Kelerchian to provide his exhaustive medical file detailing his chronic and worsening medical conditions. Second, in lieu of attaching his exhaustive medical file, Mr. Kelerchian provided two letters from his doctor of fourteen years, Louis J.

---

³ In his supporting Memorandum of Law, Mr. Kelerchian cites to more than forty (40) cases wherein district courts have granted release to similarly situated inmates in light of the ongoing COVID-19 pandemic. *See* Def.'s Mem. This is only a sampling of the hundreds of compassionate release cases granted by district courts across the nation during the past several months. Since the filing of this Motion, precedent supporting Mr. Kelerchian's release has only increased.

⁴ *See* Def.'s Mem. at 18-21 for citations to cases where compassionate release has been granted for inmates suffering from similar chronic medical conditions as those suffered by Mr. Kelerchian.

4

Gringeri, D.O. In the June 25, 2020 letter, Dr. Gringeri not only detailed his own treatment of Mr. Kelerchian, but also assessed Mr. Kelerchian's risk factors for serious illness or death from COVID-19 based on Dr. Gringeri's review of Mr. Kelerchian's medical records from FCI-Fort Dix.[5] Third, Mr. Kelerchian's medical records are already in the possession of the Department of Justice via Bureau of Prisons. Fourth, should this Court wish to see Mr. Kelerchian's medical records, counsel will obtain Mr. Kelerchian's full records from FCI-Fort Dix and Dr. Gringeri, and provide copies to the Court and the Government.

### C. FCI-Fort Dix is a time bomb for a COVID-19 outbreak.

To date, more than 7,089,611 Americans are presently infected from the virus and 204,566 have lost their lives.[6] This number continues to rise by the hour and has climbed substantially in the less than three weeks since Mr. Kelerchian filed this Motion. As recently as September 11, 2020, Dr. Anthony Fauci, director of the National Institute of Allergy and Infectious Disease (NIAID) advised the COVID-19 pandemic is far from over: "If you're talking about getting back to a degree of

---

[5] Dr. Gringeri has thirty-four (34) years of experience as a physician treating patients suffering from the same chronic conditions suffered by Mr. Kelerchian. During his years of practice, Dr. Gringeri has participated in clinical research and numerous clinical trials involving medical conditions such as bronchitis/pneumonia, respiratory tract infections, hyperlipidemia, and hypertension. A true and correct copy of Louis J. Gringeri, D.O.'s *curriculum vitae* is attached hereto as **Exhibit B**.

[6] *Coronavirus COVID-19 Global Cases,* Center for Systems Science and Engineering (CSSE) at Johns Hopkins University, https://coronavirus.jhu.edu/map.html (updating regularly)(accessed September 27, 2020, at 1:02 p.m.).

normality prior to COVID, it's going to be well into 2021, towards the end of 2021."[7] The Institute for Health Metrics and Evaluation (IHME) at the University of Washington forecasts between 415,090 to 600,000 COVID-19 deaths in the United States alone by January 1, 2021 – more than double the present death toll.[8]

In the midst of a global and national health crisis that has claimed hundreds of thousands of lives, the Government callously attempts to downplay the high rates of infection across the country and within FCI – Fort Dix. "[T]he American public is a long way from achieving 'herd immunity' – having enough infections to prevent further spread of the virus."[9] As William Hanage, an epidemiologist at the Harvard T.H. Chan School of Public Health, stated this past week: "Infection rates are so patchy that even if some areas have had high infection rates, people there are unlikely to be protected because others will bring the virus in from elsewhere."[10] Further, while the Government suggests FCI – Fort Dix demonstrates a seemingly lower infection rate than that of the nation as a whole, as addressed in Mr. Kelerchian's supporting Memorandum, prisoners are at a heightened risk for

---

[7] Sara G. Miller and Jane Weaver, Fauci says U.S. won't get back to normal until late 2021, NBC News, (Sept. 11, 2020), https://www.nbcnews.com/health/health-news/fauci-says-us-won-t-get-back-normal-until-late-n1239882.

[8] Amir Vera, Jay Croft, Cristina Maxouris, CNN, US could see a 'very deadly December' with tens of thousands of coronavirus death to come, computer model predicts, CNN, (Sept. 11, 2020), https://www.cnn.com/2020/09/11/health/us-coronavirus-friday/index.html.

[9] Karen Weintraub, About 9% of Americans exposed to COVID-19 by mid-summer. That's a long way from herd immunity, USA Today, (Sept. 25, 2020), https://www.usatoday.com/story/news/health/2020/09/25/herd-immunity-study-us-infection-rate-too-low-prevent-covid-spread-lancet/3518749001/.

[10] *Id.*

6

COVID-19 infection, more so than the nation's general population.[11] In fact, recognizing the significant risk of infection and possible/probable "second wave" of coronavirus, district courts have granted compassionate release as a preemptive measure to inmates incarcerated in facilities with no confirmed cases at all.[12] After all, it only takes exposure to one person positive for the virus to become infected.

Additionally, the Government concedes FCI-Fort Dix has at least thirty-four (34) *reported* cases of COVID-19.[13] Mr. Kelerchian, as well as most other inmates at the facility, have not been tested for the virus so it is unknown if and how many undetected cases are within the walls of FCI – Fort Dix. The situation at FCI – Fort Dix is only getting worse. On September 24, 2020, FCI – Fort Dix notified the inmate population of a possible exposure of Legionnaires' disease, a serious pneumonia that can be deadly to an individual with a compromised respiratory system, identified in the health services department. See **Exhibit C**. As part of its COVID-19 guidelines, the Centers for Disease Control and Prevention (CDC) advised, "[t]he temporary shutdown or reduced operation of a building and reductions in normal water use can create hazards for returning occupants. […] Hazards include mold, *Legionella* (the cause of Legionnaires' disease), and lead and copper contamination."[14] In order to prevent *Legionella* exposure, the CDC

---

[11] *See* Def.'s Mem. at 13-17.
[12] *See* Def.'s Mem. at 18.
[13] *See* Gov.'s Res. at 15.
[14] Centers for Disease Control and Prevention (CDC), Guidance for Reopening Buildings After Prolonged Shutdown or Reduced Operation, updated Sept. 22, 2020, https://www.cdc.gov/coronavirus/2019-ncov/php/building-water-system.html.

recommends "[w]earing a half-face air-purifying respirator equipped with an N95 filter, or an N95 filtering facepiece"[15] – neither of which are available to Mr. Kelerchian at FCI – Fort Dix. As FCI – Fort Dix has been in various stages of lockdown since March 2020 and inmate movement has been restricted,[16] it is no surprise that the facility now faces an outbreak of *Legionella* exposure. Mr. Kelerchian, an individual with a compromised respiratory system and multiple comorbidities is now at risk for COVID-19 *and* Legionnaires disease. Additionally, due to the concern for Legionnaires' exposure, FCI – Fort Dix has limited medical services. Thus, Mr. Kelerchian is unable to present to the health service department for requisite treatment and monitoring of his chronic health conditions.

District courts are recognizing FCI – Fort Dix's poor containment of the virus and exposure of inmates to various toxins within the facility.[17] Just last week, the Honorable Berle M. Schiller in the Eastern District of Pennsylvania granted compassionate release to an FCI – Fort Dix inmate actually serving a sentence for offenses related to the unlawful purchase of a gun because of the hazardous conditions at FCI – Fort Dix:

> According to the Government's response, thirty-nine inmates at Fort Dix have tested positive for COVID-19. McNish counters that, given the large population at Fort Dix and the lack of testing at the facility, the BOP case count fails to accurately portray the crisis at the prison. Indeed, as McNish notes, the numbers at Fort Dix may be

---

[15] *Id.*
[16] Mr. Kelerchian details the varying states of lockdown implemented at FCI – Fort Dix since the start of the pandemic in his supporting Memorandum. Def.'s Mem. at 26-27.
[17] *See* Def.'s Mem. at 18-21.

> underreported and a number of prisoners have been compassionately released from Fort Dix. […] The Government points out that even with greater testing, that only paints a picture of the COVID-19 situation at a particular point in time. […] Supposedly, the Government argues, because Fort Dix has not seen a significant outbreak of symptomatic individuals, it can be assumed that the preventative measures at the prison have been effective. Perhaps there are relatively few symptomatic or confirmed cases of the virus at Fort Dix FCI. The Court does not subscribe to this line of thinking. It suggests that ignorance is the best policy: Fort Dix only needs to be concerned when confirmed cases increase. That strikes the Court as a risky deal-with-it-only-if-forced-to strategy. A successful strategy for dealing with the virus in prisons must prevent this deadly scourge from infecting individuals and not simply treat infected individuals. And one cannot know the full extent of the problem if most of the individuals at Fort Dix FCI remain untested.

*United States v. McNish*, No. 10-524, at *4-5 (E.D.Pa. Sept. 22, 2020). Thus, the full extent of the danger at FCI – Fort Dix remains unknown.

### D. Public safety supports Mr. Kelerchian's compassionate release to home confinement.

Mr. Kelerchian is an ideal candidate for compassionate release to home confinement. He has a verifiable release plan[18] to ensure his safe and peaceful transition back into the community, no prior criminal history, no history of violence, no gang affiliations, and a flawless disciplinary record while incarcerated. The mitigating factors of Vahan Kelerchian's background and circumstances as cited by this Court, prompted the Bureau of Prisons to designate Mr. Kelerchian serve his term of incarceration in a Low Security Facility: FCI – Fort Dix. His crimes of conviction involve eight counts of nonviolent offenses related to conspiracy and making false statements. His PATTERN score is 3. While incarcerated, he has held

---

[18] *See* Def.'s Mem. at 28-30.

jobs within the prison and participated in numerous programming and educational opportunities to prepare for his release.  A true and correct copy of Mr. Kelerchian's Individualized Needs Plan – Program Review is attached hereto as **Exhibit D**.  Risk of recidivism for Mr. Kelerchian upon release is near zero.

The Government argues Mr. Kelerchian deserves to remain incarcerated where he is at a high risk for serious illness or death because Mr. Kelerchian maintained "professional licenses to deal in machine guns and even explosive devices"[19] almost suggesting a personal vendetta against Mr. Kelerchian *because* of his chosen profession of over twenty (20) years.  This is wholly inappropriate and beyond the purposes of punishment.  Additionally, there is near no chance of Mr. Kelerchian engaging in the same conduct that gave rise to his convictions – he no longer has a federal firearms license (FFL) or a federal explosive license (FEL), nor will he be able to obtain a FFL or FEL in the future.

Right now, he is one more elderly, medically vulnerable inmate among a prison population of 2,528 who is at risk of not only contracting and suffering serious illness or death from COVID-19, but is also likely to spread the disease to many more inmates and prison staff should he become infected.  The Government suggests Mr. Kelerchian relies on the medical expertise of his doctor, Louis J. Gringeri, D.O.  as a "get out of jail" card,[20] but Mr. Kelerchian does not seek to evade the remainder of his prison term.  On the contrary, Mr. Kelerchian asks that

---

[19] *See* Gov.'s Res. at 16.
[20] Gov.'s Res. at 12.

he continue to serve the remaining portion of his sentence under home confinement. Mr. Kelerchian is prepared to fully, completely, and faithfully comply with this Court's terms should he be granted compassionate release to home confinement, just as he has fully, completely, and faithfully complied with all of this Court's instructions since his 2013 indictment. As recognized by this Court at sentencing, "upon release from prison, Mr. Kelerchian will have a solid network of support."[21] Thus, both the law and the facts of this case overwhelmingly support Mr. Kelerchian's release to home confinement.

### III. CONCLUSION

Mr. Kelerchian's chronic medical conditions coupled with the COVID-19 global pandemic demonstrates extraordinary and compelling reasons to warrant compassionate release. As such, Vahan Steven Kelerchian respectfully request this Honorable Court grant his Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release) and commute the remainder of his sentence to home confinement with an immediate release date.

          Respectfully submitted:

          /s/Kerry C. Connor
          Kerry C. Connor
          Attorney for Defendant Vahan Kelerchian
          9013 Indianapolis Blvd., Suite C
          Highland, IN 46321
          Telephone: (219) 972-7111
          Facsimile: (219) 972-7110
          Email: kcconnor@sbcglobal.net

---

[21] *See United States v. Vahan Kelerchian*, No. 2:13-CR-66, Transcript of Sentencing Hearing, Volume II Before the Honorable Joseph S. Van Bokkelen United States District Judge (N.D. Ind. Feb. 5, 2018) at pp. 12-13.

11

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

/s/ Kerry C. Connor
Kerry C. Connor
